IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD C. RODRIGUEZ,<br><br>               Petitioner,<br><br>vs.<br><br>MARCUS POLLARD, Warden, Richard J.<br>Donovan Correctional Facility,[1]<br><br>               Respondent. | No. 2:15-cv-01154-JKS<br><br>MEMORANDUM DECISION |

Richard C. Rodriguez, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Rodriguez is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Richard J. Donovan Correctional Facility. Respondent has answered, and Rodriguez has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

Rodriguez was charged with burglary after he was arrested while fleeing the scene of a burglarized carport storage room on a bicycle stolen from a nearby home. The information also alleged an enhancement for another person being present in a residence during a burglary as well as enhancements for five prior convictions, two of them serious felonies and five of them within five years of a prior prison term. On direct appeal of his conviction, the California Court of Appeals recounted the following facts underlying the charges against Rodriguez:

> Around 1:30 a.m. on May 1, 2011, Lauren McNeil was working at her residence. She heard the door to the storage room in her carport open. The door stuck and "vibrate[d] the house" when opened and had to be pushed hard to open.

---

[1]     Marcus Pollard, Warden, Richard J. Donovan Correctional Facility, is substituted for Joe Lizzaraga, former Warden, Mule Creek State Prison. FED. R. CIV. P. 25(c).

McNeil went downstairs to turn on the carport lights.  As she looked out the
window, she saw a figure exit the storage room.  The storage room light was on; it had
been off when she went to bed.  The person walked toward McNeil, who saw him for
about five seconds before she hid behind the door.  McNeil was 13 to 15 feet away.

McNeil pounded on her front door to frighten the intruder and called 911.  He ran
away.  McNeil described him to the 911 dispatcher as of average height, Latino, and
wearing a "big red hoodie" jacket.  McNeil could not remember if he had any facial hair.
At trial, McNeil described the jacket as "loose and long."

Police Officer Kimberly Walker, responding to the 911 call, saw an individual
matching the description McNeil gave riding a bicycle across the street from the house.
Walker said "Stop.  Police" and made eye contact with [Rodriguez].  [Rodriguez] began
to pedal faster, away from Walker.  Walker called for assistance and pursued him.

A second officer spotted [Rodriguez] a short distance away.  [Rodriguez] failed to
comply with the officer's demand that he stop.  The officer grabbed [Rodriguez], who
asked, "'What did I do?'"  [Rodriguez] was wearing a "puffy 49er jacket."  The bicycle
[Rodriguez] was riding had been stolen from the fenced yard of a house less than a
quarter of a mile away.

Shortly after [Rodriguez's] arrest, McNeil identified him as the intruder.  The
storage room [Rodriguez] came out of contained bicycles, sporting equipment, and tools.
McNeil did not know if anything had been taken from the storage room.

Officers were not able to process fingerprints lifted from the storage room.  When
he was arrested, [Rodriguez] did not have gloves or tools that might assist in a burglary.

*People v. Rodriguez*, No. C072461, 2014 WL 5390842, at *1 (Cal. Ct. App. Oct. 23, 2014).

Following an initial trial, the jury was unable to reach a verdict, resulting in a mistrial.

The prosecution moved to dismiss the complaint and refile it with the addition of a possession of

stolen property charge based on his use of the stolen bicycle.  Rodriguez moved to dismiss the

amended complaint for vindictive prosecution, arguing that the prosecution was aware prior to

the first trial that evidence of the receipt of stolen property charge had been excluded and should

have refiled the charges before the first trial.  After hearing argument, the trial court denied the

motion.

On retrial, the jury found him guilty of both burglary and receipt of stolen property and

also found true the enhancements for another person being present during the burglary.  The trial

court found true the prior conviction enhancements.  The trial court sentenced him to an

aggregate term of 38 years to life imprisonment.

Through counsel, Rodriguez appealed his conviction, arguing that: 1) the prosecution

presented insufficient evidence to sustain his burglary conviction; 2) the addition of the stolen

property count constituted vindictive prosecution; 3) the trial court erred in not severing the two

counts; 4) the trial court erred in instructing the jury as to whether the carport was "functionally

connected" to McNeil's house; 5) the trial court should have granted Rodriguez a mistrial based

on the jury's seeing him in restraints; 6) the trial court violated Rodriguez's constitutional rights

by requiring him to testify regarding sentencing; 7) the trial court abused its discretion in

declining to strike one or both of Rodriguez's prior strike allegations; 8) the trial court erred in

denying Rodriguez's motion for a new trial based on ineffective assistance of counsel; 9) the

prosecutor committed misconduct during summation by commenting on Rodriguez's failure to

testify; and 10) Rodriguez should receive the benefit of Proposition 36, a legislative amendment

to the three strikes law.[2]  The Court of Appeal unanimously affirmed the judgment against

---

[2]        Under the Three Strikes law, as originally enacted in 1994, an individual
convicted of any felony offense following two prior convictions for serious or violent felonies
was subject to an indeterminate term of life imprisonment with a minimum term of no less than
25 years.  CAL. PENAL CODE, former §§ 667, subds. (b)-(i), 1170.12, subd. (c)(2).  In 2012, the
California electorate passed Proposition 36, which became known as the Three Strikes Reform
Act of 2012 ("Reform Act"), which amended the law to reduce the punishment prescribed for
certain third strike defendants.  Voters also authorized persons "presently serving" an
indeterminate term of life imprisonment imposed under the prior version of the law to seek
resentencing under the amended penalty scheme by filing a petition for recall of sentence.  CAL.
PENAL CODE § 1170.126, subd. (a)).  Under the Act, a court must grant a recall petition unless it
determines that resentencing the petitioner "would pose an unreasonable risk of danger to public
safety.  Id. § 1170.126, subd. (f).
         As discussed *infra*, Rodriguez petitioned for resentencing, which the trial court granted.
*See People v. Rodriguez*, C079076, 2016 WL 6092416, at *1 (Cal. Ct. App. Oct. 19, 2016).  The
trial court reduced the receiving stolen property conviction to a misdemeanor and sentenced him

3

Rodriguez in a reasoned, unpublished opinion issued on October 23, 2014.  *Rodriguez*, 2014 WL

5390842, at *24.  Rodriguez then petitioned in the California Supreme Court for review of all

claims unsuccessfully raised to the Court of Appeal.  On January 14, 2015, the Supreme Court

denied review "without prejudice to any relief to which [Rodriguez] might be entitled after this

court decides *People v. Conley* . . . ."[3]

Rodriguez timely filed a Petition for a Writ of Habeas Corpus in this Court on May 24,

2015.  Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1),(2).  The initial Petition raised 14

grounds for relief.  Docket No. 1.  Respondent moved to dismiss the Petition, noting that grounds

1-9 had been presented to the California Supreme Court in Rodriguez's counseled petition for

review and thus were exhausted, but arguing that grounds 10-14 had never been presented to the

Supreme Court and therefore were unexhausted.  Docket No. 17.  Respondent also moved for

grounds 1 and 6 to be dismissed as non-cognizable on federal habeas review.  *Id.*  This Court,

through a previously-assigned magistrate judge, agreed that ground 1 was non-cognizable[4] and

dismissed it, and ordered Rodriguez to indicate whether he wished to move to stay the

proceedings to pursue exhaustion or dismiss the unexhausted claims in grounds 10-14.  Docket

No. 27.  Rodriguez moved to stay the proceedings.  Docket No. 30.  The magistrate judge

recommended that the stay be denied and the unexhausted claims be dismissed, Docket No. 44,

---

to a concurrent 180-day jail term on that offense.  *Id.*  The trial court's resentencing orders were
affirmed on direct appeal.  *Id.* at *4.

[3]       In *Conley*, the California Supreme Court held that the Reform Act does not have
retroactive application which would authorize automatic resentencing for third strike defendants
serving nonfinal sentences imposed under the former version of the Three Strikes Law.  *People
v. Conley*, 373 P.3d 435, 440-41 (Cal. 2016).

[4]       The Court, through a previously-assigned district judge, adopted the magistrate's
recommendation and dismissed Ground 1 as non-cognizable.  Docket No. 33.

and those recommendations were adopted in full, Docket No. 47.  Briefing on the remaining claims is now complete, and the Petition is before the undersigned judge for adjudication.

## II. GROUNDS/CLAIMS[5]

In his *pro se* Petition before this Court, Rodriguez argues that: 1) failing to apply retroactively the mandatory ameliorative benefits of Proposition 36 violates the equal protection clause of the U.S. Constitution; 2) the prosecution presented insufficient evidence of Rodriguez's intent to commit theft to sustain the burglary conviction; 3) the People engaged in vindictive prosecution by adding the receiving stolen property charge after the mistrial; 4) the trial court erred by refusing to sever the charges against Rodriguez; 5) the trial court erred in instructing the jury as to whether the carport was "functionally connected" to McNeil's house; 6) the trial court should have granted Rodriguez a mistrial based on the jury's seeing him in restraints; 7) the trial court violated Rodriguez's constitutional rights against self-incrimination by requiring him to testify regarding sentencing; and 8) the prosecutor committed misconduct during summation by commenting on Rodriguez's failure to testify.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,"

---

[5]     For ease of reference and in light of the Court's prior dismissal of Ground 1, the Court will renumber Rodriguez's remaining claims, listed in the Petition as Grounds 2-9, as Grounds 1-8.

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Rodriguez has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

## IV. DISCUSSION

Ground 1.      *Sentencing Error*

Rodriguez first argues that the trial court erred in imposing a concurrent term of 25 years to life imprisonment for receiving stolen property. According to Rodriguez, he is entitled to the benefits of Proposition 36 and the Reform Act, which was passed five days after the court sentenced him.

As an initial matter, to the extent Rodriguez argues that the California state courts erred in determining that the Reform Act did not apply retroactively, such contention presents solely

an issue of state law that is not cognizable on federal habeas review.  *See Christian v. Rhode*, 41

F.3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness, a state court's

misapplication of its own sentencing laws does not justify federal habeas relief."); *see also*

*Wilson v. Corcoran*, ,562 U.S. 1, 5 (2010) (noting that the United States Supreme Court has

repeatedly held that "federal habeas corpus relief does not lie for errors of state law") (quoting

*Estelle*, 502 U.S. at 67)).

And although Rodriguez's contention that the state court's determination of his claim

violates equal protection under the U.S. Constitution facially appears to present a federal issue, it

is nonetheless also without merit.  In *People v. Yearwood*, 151 Cal. Rptr. 3d 901 (Cal. Ct. App.

2013), the California Court of Appeal considered and rejected the appellant's argument that

applying Proposition 36 only prospectively violated equal protection by creating two sets of

felony offender*s* who were similarly situated but for the fact that some, like Rodriguez, were

sentenced before Proposition 36 took effect while others were sentenced after.  The *Yearwood*

court rejected the appellant's contention that prisoners were a "suspect class" whose equal

protection claims demanded strict scrutiny, reasoning that "[t]he status of being incarcerated is

neither an immutable characteristic nor an invidious basis of classification."  *Id.* at 913.  The

*Yearwood* court thus applied the rational basis test and concluded that the appellant failed to

show that no rational basis existed for "uneven" application of the resentencing statute.  *Id.*; *see*

*McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir. 1991) (under rational basis test, habeas

petitioner bears burden of proof).

In this case, the Court of Appeal relied on *Yearwood* to conclude that Rodriguez failed to

allege facts establishing a violation of the U.S. Constitution.  *Rodriguez*, 2014 WL 5390842, at

*22-23.  Rodriguez's status as a prisoner who was sentenced prior to the effective date of

Proposition 36 is insufficient to raise an equal protection claim cognizable in federal court either.

"[A] mere demonstration of inequality is not enough; the Constitution does not require identical

treatment."  *McQueary*, 924 F.2d at 835.  Moreover, the U.S. Supreme Court has "repeatedly

upheld recidivism statutes against contentions that they violate constitutional strictures"

including equal protection.  *Parke v. Raley*, 506 U.S. 20, 27 (1992).  In the absence of clearly-

established Supreme Court law supporting his equal protection challenge to the non-retroactivity

of Proposition 36, Rodriguez cannot obtain federal habeas relief.  *See Knowles v. Mirzayance*,

556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal

law for a state court to decline to apply a specific legal rule that has not been squarely

established by this Court") (citations and internal quotations omitted).

　　　　Furthermore, it appears that this claim is moot.  Article III, § 2 of the United States

Constitution requires the existence of a case or controversy through all stages of federal judicial

proceedings.  This means that, throughout the litigation, the petitioner "must have suffered, or be

threatened with, an actual injury traceable to the defendant and likely to be redressed by a

favorable judicial decision."  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations

omitted); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The rule in federal cases is

that an actual controversy must be extant at all stages of review, not merely at the time the

complaint is filed.").  If an event occurs subsequent to the filing of a lawsuit which deprives a

court of the ability to provide meaningful relief, the case becomes moot and is subject to

dismissal.  *See United States v. Alder Creek Water Co.*, 823 F.2d 343, 345 (9th Cir. 1987) ("A

case becomes moot when interim relief or events have deprived the court of the ability to redress

the party's injuries."). Similarly, a claim for habeas relief becomes moot when the controversy between the parties is no longer alive because the party seeking relief has obtained the relief requested. *See*, *e.g.*, *Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) (a claim is moot when the court no longer has power to grant the requested relief).

As noted above, Rodriguez petitioned for resentencing, which the trial court granted. *See Rodriguez*, 2016 WL 6092416, at *1. The trial court reduced the receiving stolen property conviction to a misdemeanor and sentenced him to a concurrent 180-day jail term on that offense. *Id.* The trial court's resentencing orders were affirmed on direct appeal. *Id.* at *4. Even if this Court were to conclude that the benefits of Proposition 36 must be applied retroactively, such order would not assist Rodriguez, because he already petitioned for and was granted that relief. Accordingly, Rodriguez is not entitled to relief on this claim in any event.

Ground 2.      <u>Insufficiency of the Evidence</u>

Rodriguez next argues that insufficient evidence supported his conviction for burglary. As articulated by the Supreme Court in *Jackson*, the federal constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the California court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical

facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *Schlup v. Delo*, 513 U.S. 298, 330 (1995). The United States Supreme Court has recently even further limited a federal court's scope of review under *Jackson*, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). *Jackson* "makes

11

clear that it is the responsibility of the jury—not the court—to decide what conclusions should

be drawn from evidence admitted at trial." *Id.* Under *Cavazos*, "a federal court may not

overturn a state court decision rejecting a sufficiency of the evidence challenge simply because

the federal court disagrees with the state court. The federal court instead may do so only if the

state court decision was 'objectively unreasonable.'" *Id.* (quoting *Renico v. Lett*, 559 U.S. 766,

773 (2010)).

The Court of Appeal considered and rejected Rodriguez's insufficiency of the evidence

claims on direct appeal as follows:

> Under section 459 burglary requires an unlawful entry with the specific intent to
> commit a felony. However, a defendant may be guilty of burglary regardless of whether
> any felony or theft is actually committed, or the crime actually committed is different
> from that originally contemplated. The carrying away of stolen property is not an
> element of burglary. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041–1042.) Burglary
> requires entry with the proscribed intent; such entry constitutes the completed crime of
> burglary regardless of whether any felony or theft is actually committed. (*People v. Allen*
> (1999) 21 Cal.4th 846, 863, fn. 18.)
>
> The intent required for burglary may be inferred from facts and circumstances.
> (*In re Leanna W.* (2004) 120 Cal. App. 4th 735, 741; *People v. Moody* (1976) 59 Cal.
> App. 3d 357, 363.) The mere possession of stolen property will not alone support a
> conviction for theft of property; however, the possession of recently stolen property is so
> incriminating that only slight additional evidence is necessary to sustain a burglary
> conviction. The jury determines, in light of all the evidence, whether or not such an
> inference should be drawn. (*People v. McFarland* (1962) 58 Cal.2d 748, 754–755.)
>
> Similarly, intent to burglarize can be shown by evidence of unlawful entry, flight
> from the scene, and failure to provide a plausible reason for being on the premises. Even
> if no crime is committed after entry, flight and the lack of an explanation for being on the
> premises provide sufficient evidence for the jury to convict a defendant of burglary.
> (*People v. Martin* (1969) 275 Cal. App. 2d 334, 339.)
>
> [Rodriguez] argues insufficient evidence supports the jury's finding that he
> intended to commit theft when he entered the storage room. According to [Rodriguez],
> the People relied on his possession of the stolen bicycle to demonstrate the requisite
> intent. [Rodriguez] contends that in order to prove intent, the uncharged misconduct
> must be sufficiently similar to the charged offense to support the inference that
> [Rodriguez] acted with the same intent in each instance. (*People v. Kelly* (2007) 42
> Cal.4th 763, 783.) However, "[i]nasmuch as [Rodriguez] was not charged or convicted
> of the theft of the bicycle that he possessed, there is too much dissimilarity to infer that

he had entered the storage room for the purpose of stealing a bicycle."  In support, [Rodriguez] cites numerous cases in which the court admitted evidence of actual prior burglaries to establish intent in a pending charged burglary.

We disagree with [Rodriguez's] analysis of the two crimes.  To be admissible to prove intent, the two charges must be sufficiently similar to support the inference that [Rodriguez] possessed the same intent in carrying out each crime.  (*People v. Scott* (2011) 52 Cal.4th 452, 471–472 (*Scott*).)  The least degree of similarity is required to prove intent.  A higher degree of similarity is required to prove common plan and the highest to prove identity.  (*People v. Soper* (2009) 45 Cal.4th 759, 776; *People v. Ewoldt* (1994) 7 Cal.4th 380, 402–403 (*Ewoldt*).)  However, despite [Rodriguez's] argument to the contrary, there is no requirement that the two charges be the same.

Here, the trial court found that the jury could make the logical inference that defendant harbored the same criminal intent in entering the storage room and when he came into possession of the bicycle.  The court also rejected a requested defense instruction because it would have prevented the jury "from making what could be a logical conclusion that [Rodriguez] had the intent at the time the bicycle was taken or came into his possession, and he had that same intent at the time he was inside the storage room at the McNeil residence."

We agree that the crimes were sufficiently similar to allow admission of the stolen bicycle to prove [Rodriguez's] intent on entering McNeil's storage room.  [Rodriguez], early one morning, entered the McNeils' storage room and turned on the light.  When confronted by McNeil, [Rodriguez] fled.  He initially evaded police but was subsequently apprehended.  When police arrested him, he was riding a bicycle stolen that night from the courtyard of a nearby house.  Both crimes occurred on the same evening, in the same neighborhood, and involved entering an unoccupied area adjacent to a residence.  The bike was stolen from a fenced courtyard; [Rodriguez] entered the storage room in a carport.  The jury had before it sufficient evidence to support [Rodriguez's] burglary conviction.

*Rodriguez*, 2014 WL 5390842, at *2-3.

The Court of Appeal's holding is both reasonable and fully supported by the record.

Rodriguez argues in his Petition, as he did on direct appeal, that the evidence did not

conclusively establish that he had the requisite intent.  In support of his claim, Rodriguez again

argues that his possession of the bicycle could not be used to establish criminal intent in entering

the storage room because the crimes were not sufficiently similar.  But this Court is bound by the

Court of Appeal's determination that a jury could infer that Rodriguez had the same criminal

intent in entering the storage room and when he came into possession of the bicycle such that

13

evidence regarding his possession of the bicycle was sufficient under California state law to prove intent as to entering the storage room.  *See Bradshaw*, 546 U.S. at 76 (per curiam) (a fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").  Rodriguez cites to no authority of the U.S. Supreme Court that contradicts this state court holding, and the Court is unaware of any.  In the absence of any clearly established federal law on this issue, AEDPA relief is foreclosed.  *See Carey*, 549 U.S. at 77.

Moreover, to the extent Rodriguez points to any perceived weaknesses in the prosecution's case and inconsistencies presented at trial, all of the evidence in support of his claim was before the jury for its assessment.  This Court is precluded from re-weighing the evidence or re-assessing witness credibility.  *Schlup*, 513 U.S at 330; *Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004).  It is also well-settled under federal law, like California law, that the testimony of even a single witness is sufficient to support a conviction under the *Jackson* standard.  *See, e.g.*, *Bruce*, 376 F.3d at 957-58 (testimony of single witness sufficient to uphold conviction under Jackson); *United States v. McClendon*, 782 F.2d 785, 790 (9th Cir. 1986).  Furthermore, "[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."  *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation and internal quotation marks omitted); *see also Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000) (evidence may be found sufficient to support conviction even where it "was almost entirely circumstantial and relatively weak," and fact that reviewing court may have reached different result or have reasonable doubt not enough to overcome *Jackson's* "high standard").

14

Although it might have been possible to draw a different inference from other evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Rodriguez bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. For the reasons persuasively stated by the Court of Appeal, the record does not compel the conclusion that no rational trier of fact could have found that Rodriguez possessed the requisite criminal intent when he entered the storage room, especially considering the double deference owed under *Jackson* and AEDPA. *See Valdez v. Clark*, 587 F. App'x 414, 414-25 (9th Cir. 2014). Rodriguez is therefore not entitled to relief on his legal insufficiency claim.

Ground 3.     *Vindictive Prosecution*

Rodriguez next alleges that he was subjected to vindictive prosecution when the prosecution added the receipt of stolen property charge after the jury in his initial trial, which involved only the charge for burglary, was unable to reach a verdict, resulting in a mistrial. The prosecution moved to dismiss the complaint and refile it with the addition of the stolen property charge. Prior to his retrial, Rodriguez moved to dismiss for vindictive prosecution, arguing that the prosecution did not rebut the presumption of vindictiveness that attached to the addition of the stolen property charge. The record reflects that the prosecution responded that the receipt of stolen property count was not included in the original information because, at the preliminary hearing on that information, the victim of the bicycle theft could not be contacted and the officer involved was unavailable. According to the prosecution, because Rodriguez faced a life imprisonment term on the burglary count, the prosecution elected not to continue the preliminary hearing but instead to proceed on the burglary count alone. After the jury failed to reach a

15

verdict in the initial trial, the People decided to proceed on all possible charges in the second

trial.  In considering this claim on direct appeal, the Court of Appeal summarized the following

factual background:

> The trial court heard argument on the motion.  [Rodriguez] claimed the prosecution knew of the stolen bicycle three to four months prior to his original trial. According to [Rodriguez], once the prosecution realized the stolen bicycle evidence could not be used in the first trial, the complaint should have been dismissed then and refiled with the additional charge before jeopardy attached.
>
> Although the trial court found a presumption of prosecutorial vindictiveness stemming from the filing of an additional charge, the court determined the prosecution had rebutted the presumption.  The court cited the prosecution's declaration, which stated "that the information was not known to the People earlier in the stage, which she recounts in detail that when the case was originally assigned to her, the Davis Police Department report regarding the bike then was not part of the case or the case as it was submitted to the DA's office for filing, that it was submitted under a different case number from the burglary, when it came to the DA's office from the Davis Police Department.
>
> "That prior to the preliminary hearing the assigned prosecutor was told that the report existed and informed defense counsel that there was information that Mr. Rodriguez may have stolen a bike earlier.
>
> "[A]t the time of the preliminary hearing there was a request by the defense, and the preliminary hearing went forward, that the assigned prosecutor was unable to contact the victim of the bike theft, although that was attempted over a two week period, that the officer who could have testified at the preliminary hearing was not available on the date set for the preliminary hearing, and so the case proceeded.
>
> "So I think that the People have shown that, in fact, the new charge was not motivated by vindictiveness, so I'm going to deny the motion."

*Rodriguez*, 2014 WL 5390842, at *4-5.

The United States Supreme Court has held that "[t]o punish a person because he has done

what the law plainly allows him to do is a due process violation 'of the most basic sort.'"  *United

States v. Goodwin*, 457 U.S. 368, 372 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357,

363 (1978)).  In *Blackledge v. Perry*, 417 U.S. 21 (1974), the Supreme Court held that a

presumption of vindictiveness arises when, following a defendant's exercise of his state-law

right to a trial de novo after a conviction in a minor court, the prosecutor lodges a superseding

indictment increasing the charge from a misdemeanor to a felony.  The *Blackledge* Court stated that, "[a] person convicted of an offense is entitled to pursue his statutory right to a trial de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one[.]"  *Id.* at 28.

The Supreme Court has declined, however, to apply the presumption of vindictiveness where the prosecution files additional charges in a superseding indictment following unsuccessful pre-trial plea bargaining, reasoning that, "in the 'give-and-take' of plea bargaining, there is no . . . element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer."  *Bordenkircher*, 434 U.S. at 363.  Likewise, the Court has declined to adopt such presumption where additional charges were brought after a defendant demanded a jury trial.  *Goodwin*, 457 U.S. at 380-82.

However, the U.S. Supreme Court has not yet addressed whether or when a presumption of prosecutorial vindictiveness arises where additional charges are filed following a mistrial.  In the absence of clearly established Supreme Court law supporting his vindictive prosecution claim, Rodriguez cannot obtain federal habeas relief.  *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law") (citation, internal brackets and quotations omitted).

Moreover, even if a presumption were to exist here, Rodriguez fails to show that the

Court of Appeal's determination that the presumption was rebutted was anything but reasonable.

As the Court of Appeal explained:

> Here, the prosecution provided a full explanation for the failure to add the receipt of stolen property count.  At the time of the original filing, the report of the bicycle theft was not included in the information provided to the district attorney's office.  When the incident was submitted, it had a case number different from that for the burglary.  After learning of the bicycle theft, the prosecution was unable to contact the victim and the arresting officer was unavailable.  At the time of the preliminary hearing, the prosecution decided not to continue the hearing since [Rodriguez] faced a possible life term for burglary.
>
> The bicycle theft charge became an issue when, during motions in limine, the trial court ruled the prosecution would not be able to use the bicycle theft charge in the trial on the burglary charge.  The first trial ended in a hung jury.  Following the mistrial, the prosecution, faced with the exclusion of the bicycle theft evidence, decided to add the bicycle theft charge.  The arresting officer was available for the preliminary hearing and the victim was available for trial.
>
> The trial court found the prosecution's explanation sufficiently rebutted the presumption of vindictiveness.  We agree.  The prosecution explained it was a change in circumstances and not a desire to inflict additional punishment on [Rodriguez] following the mistrial that spurred the addition of the bicycle theft charge.  At the time the original charges were filed, the prosecution was unaware of the bicycle theft.  When the prosecution became aware, the arresting officer was not available and the victim could not be reached.  Although the prosecution could have continued the preliminary hearing, the prosecution explained that [Rodriguez] already faced a life term for the burglary.  Once the prosecution learned the bicycle theft charge could not be used at trial and the first trial ended in a mistrial, the prosecution added the bicycle theft charge.
>
> [Rodriguez] argues the prosecution was aware prior to the first trial that the bicycle evidence would be excluded and "as such should have refiled the charges before proceeding to the first trial."  However, the question is whether the prosecution successfully rebutted the presumption of vindictiveness, not whether the prosecution should have refiled the charges once it became aware of the bicycle incident.  The explanation provided by the prosecution supports the trial court's finding that the addition of the bicycle theft charge "was not motivated by vindictiveness."

*Rodriguez*, 2014 WL 5390842, at *5-6.

The Court of Appeal's determination is both reasonable and fully supported by the

record.  Accordingly, Rodriguez is not entitled to relief on this ground.

18

Ground 4.     _Erroneous Denial of Severance Motion_

Rodriguez next contends that the trial court violated his right to due process when it denied his motion to sever the burglary count from the receipt of stolen property count. According to Rodriguez, the two counts were tried together "for the express purpose of reliance on the spill-over effect of the stronger case with the weaker case."  Rodriguez avers that the joinder of the weaker burglary charge, in which no property was taken, was influenced by the possession of stolen property charge.

Improper joinder in itself does not violate the Constitution.  _United States v. Lane_, 474 U.S. 438, 446 n.8 (1986).  In _Lane_, the Supreme Court stated in a footnote that "[i]mproper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."  _Id._ The Ninth Circuit subsequently stated in an unpublished opinion:

> _Lane_ considered only the effect of misjoinder under Federal Rule of Criminal Procedure 8, and expressly stated that no constitutional claim had been presented.  _See Lane_, 474 U.S. 438, 446 & n.9, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986).  Thus, Lane's broad statement—found in a footnote without citation to any legal authority—that misjoinder could only rise to the level of a constitutional violation if it was so prejudicial as to violate due process, was probably dictum.  Only Supreme Court holdings are controlling when reviewing state court holdings under 28 U.S.C. § 2254; Court dicta and circuit court authority may not provide the basis for granting habeas relief.  _Lockyer v. Andrade_, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L.Ed.2d 144 (2003).

_Young v. Pliler_, 273 F. App'x 670, 672 n.1 (9th Cir. 2008); _see also Collins v. Runnels_, 603 F.3d 1127, 1132-33 (9th Cir. 2010).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the

relevant state-court decision." *Williams*, 529 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* Given that there is no clearly established Federal law in this instance, this Court cannot grant relief, since habeas relief is warranted only when the state court adjudication runs afoul of clearly established federal law. *See Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009) (absent a Supreme Court decision that squarely addresses the issue, it "cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent . . . and so we must defer to the state court's decision").

In any event, the state courts reasonably rejected Rodriguez's claim. *See Young*, 273 F. App'x at 672 (assuming *Lane* provided the relevant Supreme Court precedent to reach the merits of petitioner's claim that joinder of murder charge and assaults charges violated his constitutional rights). A joinder, or denial of severance, of counts may rise to a constitutional violation if it results in prejudice great enough to render the trial fundamentally unfair. *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997). There is a "high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." *United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir. 1986) (quoting *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985)). But joinder generally does not result in prejudice if the evidence of each crime is simple and distinct (even if the evidence is not cross-admissible), and the jury is properly instructed so that it may compartmentalize the evidence. *Bean v. Calderon*, 163 F.3d 1073, 1085-86 (9th Cir. 1998).

Even assuming, arguendo, that the Supreme Court's footnote could be considered clearly established Federal law, no constitutional violation occurred in this case, because the prejudice was not so great as to deny Rodriguez his right to a fair trial.  In denying Rodriguez's motion to sever the receipt of stolen property charge from the burglary count, the trial court concluded that the offenses charged were of the same class of crimes or had common characteristics or attributes and noted the possibility of cross-admissible evidence.  The court likewise found the charges to be fairly similar in nature and not unduly inflammatory with regard to each other,[6] the strength of the burglary case not to be unduly outweighed by the strength of the receipt of stolen property case, and that joinder of the case would not cause undue prejudice.  The trial court's determination is reasonable and fully supported by the record, and comports with applicable federal law.  *See Davis v. Woodford*, 384 F.3d 628, 638-39 (9th Cir. 2004) (denial of motion to sever trial of capital and noncapital charges based on separate incidents not a violation of due process because evidence was cross-admissible, the weight of evidence with respect to each incident was roughly equal, the evidence as to each incident was distinct, and the jury was

---

[6]	To the extent that Rodriguez's Petition could be construed to claim that the joinder improperly allowed evidence of other bad acts (namely, the charge(s) from the other incident) with respect each of the counts, such claim provides no basis for relief.  The United State Supreme Court has left open the question of whether state law would violate the Due Process Clause if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Estelle*, 502 U.S. at 75 n.5 ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008).  As such, the Ninth Circuit has routinely found federal habeas relief to be foreclosed by § 2254(d)(1) for claims challenging the admission of evidence of prior bad acts or crimes.  *See, e.g., Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008); *Alberni v. McDaniel*, 458 F.3d 860, 866 (9th Cir. 2006).  Lacking any clearly established Supreme Court authority prohibiting admission of such evidence, such argument does not warrant relief on Rodriguez's misjoinder claim either.

properly instructed); *Sandoval v. Calderon*, 241 F.3d 765, 773 (9th Cir. 2001) (given the strength of the prosecution's case against petitioner on both sets of murders and the cross-admissibility of the evidence on each set, petitioner's trial was not actually prejudiced by the joinder). Accordingly, Rodriguez's improper joinder claim does not merit federal habeas relief.

Ground 5.     *Instructional Error*

     Rodriguez also avers that the trial court violated his right to due process when it failed to provide the jury an instruction explaining the meaning of "functionally connected" with respect to the first-degree burglary.  Rodriguez contends that the omission "allowed the jury to conclude that the storage area in the instant case was functionally connected to the McNeil's house without making an assessment of the evidence before them on that issue, thus removing a key factual determination from the province of the jury."

     Because jury instructions in state trial are typically matters of state law, federal courts are bound by a state appellate court's determination that a jury instruction was not warranted under state law.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (noting that the Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir. 1995).  An instructional error, therefore, "does not alone raise a ground cognizable in a federal habeas proceeding." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1986) (citation omitted).

     A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  *Boyde v. California*, 494 U.S. 370, 380

(1990).  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471 U.S. 307, 309 (1985).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record.  *Estelle*, 502 U.S. at 72.  This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn.  *Id.* at 72-73.  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation."  *Id*.

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt.  *See In re Winship*, 397 U.S. 358, 364 (1970).  "[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.  Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury."  *Victor v. Nebraska*, 511 U.S. 1, 5 (1994).  A federal habeas court "must determine whether there was a reasonable likelihood that the jury understood the instruction to allow a conviction predicated on proof that was insufficient to meet the requirements of due process."  *Lisenbee v. Henry*, 166 F.3d 997, 999 (9th Cir. 1999) (*citing Ramirez v. Hatcher*, 136 F.3d 1209, 1213 (9th Cir. 1998)).

The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471

U.S. 307, 309 (1985).  This Court must also assume in the absence of evidence to the contrary

that the jury followed those instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000);

*Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the

law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the

subject in depth).

The California Court of Appeal considered and rejected Rodriguez's claim on direct

appeal as follows:

> The court initially instructed the jury on first degree burglary.  The instruction defined burglary as entry into an inhabited dwelling, which was defined to include "any structure, garage, office, or storeroom that is attached to the house and functionally connected with it."
>
> During deliberations, the jury sent a note to the court asking: "What is the definition of 'functionally connected' with regards to 1st degree burglary?  [¶] Is the storage room considered 'functionally connected' to the main house in this case specifically."
>
> In response, the trial court proposed to instruct: "'As used in Instruction 1701 . . . the term "functionally connected" to a residence means, quote, "used in a related or complimentary [sic ] way."  Entry into such a structure may qualify as a first-degree burglary even if there is no connecting door to the residence and the structure serves as a storehouse, workshop, or office, or serves some other need of the residence.' "
>
> Defense counsel objected to the second sentence of the proposed instruction, arguing, "[i]t's taking a question of fact away from the jurors and telling them right now that the storage closet is functionally connected, and any entry into that storage closet with specific intent is burglary.  And in that context, I believe that would be a direct[ed] verdict to the jury."
>
> The trial court noted the language of the instruction came from *People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1112 and stated: "My view is that quoting only the definition of 'functionally connected' that we see in the *Rodriguez* case doesn't help.  Unless you give some examples, there's no way for the jury to really determine what the concept of functionality is as it relates to the analysis of whether a structure qualifies as a first-degree burglary or not.  I chose to quote from . . . *Rodriguez* because it does give you some idea what they're talking about and because it actually didn't use any of the terminology that has been referenced during the course of this trial.
>
> "Furthermore, I simply said that entry into a functionally connected structure may qualify as a first-degree burglary.  I certainly didn't say that it would qualify as a first-degree burglary.  That is something within the jury's province."

## Discussion

[Rodriguez] contends the court's instruction on "functionally connected" allowed the jury to conclude the storage area in question was functionally interconnected to McNeil's house without assessing the evidence before it and in so doing removed a key factual determination from the jury.

In instructing the jury, the trial court must instruct on the applicable law, including the meaning of technical terms employed in the crime charged.  However, whether the evidence meets the given definition is a question for the jury to decide. (*People v. Figueroa* (1986) 41 Cal.3d 714, 726.)  We assess the jury instructions as a whole to determine whether there is a reasonable likelihood the jury applied the instruction in a way that violated the defendant's constitutional rights.  (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1237.)  We review the instructions de novo. (*People v. Hamilton* (2009) 45 Cal.4th 863, 948.)

After the jury requested further guidance on the phrase "functionally connected," the trial court instructed that the area in question must be "functionally related to and immediately contiguous to a dwelling" but did not have to have a "connecting door to the residence."  In addition, the court told the jury the structure could serve as a "storehouse, workshop, or office or serve[] some other need of the residents."

[Rodriguez] argues that "[w]hether or not a structure is functionally connected depends on a number of factors and not just the physical proximity to the house," and the "actual use of the area, was the determinative factor for the jury to determine whether it was functionally connected, rather than its proximity to the house."  However, the trial court did not limit the jury's inquiry to whether or not McNeil's storage area was near the house.  The court informed the jury that to be functionally connected the area must be "immediately contiguous," but it also had to be "functionally related to" a dwelling.  The area need not have a connecting door.  In addition, the court provided several examples of functionally related areas that served the needs of the residents.  These instructions provided a framework for the jury to consider the evidence before it; they did not preordain a result.

Similar instructions were found sufficient in *People v. Thorn* (2009) 176 Cal.App.4th 255.  In *Thorn*, the defendant was convicted of burglary involving a carport. The trial court had instructed that a "'carport that is attached to an inhabited dwelling house is part of the inhabited dwelling house.'"  *(Id.* at p. 266.)  The defendant argued the instruction removed essential questions from the jury.  The appellate court rejected this argument, finding the jury was still required to find all the elements of the offense, including whether the carport was attached to the structure.  (*Id.* at pp. 267–268.)  In *People v. Fox* (1997) 58 Cal.App.4th 1041, the defendant was convicted of burglary after entering an attached garage with no internal access to the house.  (*Id.* at p. 1044.)  The court instructed that if "'a garage is attached to an inhabited dwelling house and is, therefore, not a separate structure, it is considered to be a part of the inhabited structure.'" (*Id.* at p. 1045.)  The defendant challenged the instruction as usurping the jury's fact-finding function.  (*Ibid.*)  The appellate court disagreed, finding the jury was

still required to find the material issues of fact, namely whether the defendant entered the garage and whether that garage was attached to an inhabited structure.  (*Id.* at p. 1047.)

The instructions in the present case did not prevent the jury from considering the evidence before it to determine whether McNeil's storage room was functionally connected to her residence.  We find no error.

*Rodriguez*, 2014 WL 5390842, at *7-9.

Here, as the California Court of Appeal found, the trial court's jury instructions correctly stated the elements of burglary under California law, and this court cannot second-guess that determination.  *See Bradshaw*, 546 U.S. at 76 ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Consequently, "[b]ecause the trial court's instruction . . . was a correct statement of law," Rodriguez cannot show that the instruction "relieved the prosecution of its burden of proving, beyond a reasonable doubt," all the elements of the burglary offense.  *Spivey v. Rocha*, 194 F.3d 971, 976-77 (9th Cir. 1999).  Rodriguez is thus not entitled to relief on this ground.

Ground 6.     *Denial of Mistrial based on Appearance of Restraints*

Rodriguez next argues that the trial court erred when it denied his motion for mistrial after the jury saw him in handcuffs and belly chains in the courthouse hallway.  When considering this claim on direct appeal, the Court of Appeal laid out the following facts underlying this claim:

During voir dire of prospective jurors, [Rodriguez] requested a *Marsden* hearing.[FN2]  During the hearing, [Rodriguez] stated he was supposed to be appearing before a different judge and that "on three different occasions when I went out to use the restroom, the jury—all the jury seen [sic ] me in handcuffs and belly chains on the way in, on the way out, and then back in again.  So that's grounds for a mistrial."

FN2.   *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

      After denying the *Marsden* motion, the trial court, with the prosecution present, stated that potential jurors had observed defendant in the hallway in handcuffs and belly chains.  The court noted "that method of transport is virtually always used in this courthouse.  We all know what the shortcomings are in terms of security issues in this case and how it's virtually impossible to immunize potential jurors from knowledge that a defendant is in custody."

      The court later stated: "Now, my immediate concern right now is that you expressed concern and anger, and my bailiff was afraid that you might actually physically act out which is why he apparently placed you in handcuffs.  I expect that everyone in this courtroom will conduct themselves with decorum.  I know you did during the last trial. There were no problems during the last trial.  I expect there will be no problems during this trial.  I'm going to ask my bailiff to take the handcuffs off you, but if there is an outburst, especially in front of the jury, then I'm going to have to take some steps to make sure that that doesn't repeat itself.  [¶] . . . [¶]  So do I have your commitment that there won't be any problems in front of the jury?"  [Rodriguez] initially replied that he could not make such a commitment because "my mind is not where it needs to be."  After further discussion about defense counsel's representation of him, [Rodriguez] gave his word and the handcuffs were removed.

      The court instructed the jury with CALCRIM No. 204 at the beginning of the trial: "The fact that physical restraints, handcuffs, and things of that nature are applied to anybody in this case, a witness, the defendant, that's not evidence in this case, and no one can use observations or that kind of information in making the important decisions about guilt or innocence in this case."  At the close of evidence, the court instructed: "The fact that physical restraints have been placed on the defendant is not evidence.  Do not speculate about the reason.  You must completely disregard this circumstance in deciding the issues in this case.  Do not consider it for any purpose or discuss it during your deliberations."

*Rodriguez*, 2014 WL 5390842, at *12.

      The Sixth and Fourteenth Amendments to the United States Constitution assure a

criminal defendant the right to a fair trial.  *See Estelle v. Williams*, 425 U.S. 501, 503 (1976).

Visible shackling of a criminal defendant during trial "undermines the presumption of innocence

and the related fairness of the factfinding process" and "'affront[s]' the 'dignity and decorum of

judicial proceedings that the judge is seeking to uphold.'"  *Deck v. Missouri*, 544 U.S. 622,

630-31 (2005) (*quoting Illinois v. Allen*, 397 U.S. 337, 344 (1970)); *see also Larson v.*

*Palmateer*, 515 F.3d 1057, 1062 (9th Cir. 2008).  The Supreme Court has therefore held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial."  *Deck*, 544 U.S. at 629.  Those interests include "physical security," "courtroom decorum" and "courtroom security."  *Id.* at 624, 628.  Accordingly, criminal defendants have "the right to be free of shackles and handcuffs in the presence of the jury, unless shackling is justified by an essential state interest."  *Ghent v. Woodford*, 279 F.3d 1121, 1132 (9th Cir. 2002); *see also Jones v. Meyer*, 899 F.2d 883, 884 (9th Cir. 1990); *Wilson v. McCarthy*, 770 F.2d 1482, 1484 (9th Cir. 1985).

Nonetheless, shackling is not unconstitutionally prejudicial *per se*.  *Allen*, 397 U.S. at 343-44; *Duckett v. Godinez*, 67 F.3d at 748 ("shackling is inherently prejudicial, but it is not per se unconstitutional").  Consequently, unjustified shackling does not rise to the level of constitutional error unless the defendant makes a showing that he suffered prejudice as a result.  *Ghent*, 279 F.3d at 1132 (citations omitted); *see also Larson*, 515 F.3d at 1064 (finding harmless state trial court's violation of the petitioner's due process rights in requiring him to wear security leg brace during trial).  The Ninth Circuit has held that "the greater the intensity of shackling and the chains' visibility to the jurors, the greater the extent of prejudice."  *Spain v. Rushen*, 883 F.2d 712, 722 (9th Cir. 1989).  Thus, it has been recognized that "physical restraints such as a waist chain, leg irons or handcuffs may create a more prejudicial appearance than more unobtrusive forms of restraint."  *Larson*, 515 F.3d at 1064.

Rodriguez argues, as he did on direct appeal, that "[t]here was simply no reason to have [him] shackled other than the convenience of the deputies bringing him into court."  But as the

trial court noted, and the Court of Appeal agreed, it is a common practice in courts to place

defendants in restraints when they are escorted into courtroom, and the bailiff voiced concern

that Rodriguez might "physically act out" because Rodriguez had "expressed concern and

anger."           In any event, the Court of Appeal alternatively concluded that Rodriguez failed to

establish that he suffered prejudice as a result.  As the Court of Appeal explained:

> Even if the court's stated reasons do not amount to a manifest need for restraints,
> we find no abuse of discretion.  A brief glimpse of defendant being transported in
> restraints outside the courtroom does not give rise to prejudicial error.  (*People v.
> Cunningham* (2001) 25 Cal.4th 926, 988–989; *People v. Tuilaepa* (1992) 4 Cal.4th 569,
> 583–584.)  As one Court of Appeal observed: "The customary practice of utilizing
> physical restraints while transporting a prisoner from place to place, e.g., from jail to
> courtroom and back, is a matter of common knowledge and generally acknowledged as
> acceptable for the protection of both the public and defendant."  (*People v. Jacobs* (1989)
> 210 Cal.App.3d 1135, 1141.)  Nothing in the record reveals the restraints impaired
> [Rodriguez's] ability to participate in his defense; we find no error in the trial court's
> denial of his mistrial motion.

*Rodriguez*, 2014 WL 5390842, at *13.

The Court of Appeal's determination is both reasonable and fully supported by the

record. Rodriguez provides no support for his contention that he was deprived of a fair trial

because the jury briefly saw him shackled as he was transported to the courtroom.  This lack of

evidentiary support is fatal to his claim.  *Woodford v. Visciotti*, 537 U.S. 19, 15 (2002) (*per

curiam*) (holding that state habeas petitioner carries the burden of proof).  In light of the

instructions given and the fact that Rodriguez was not wearing restraints while in the courtroom,

the state courts' rejection of Rodriguez's claim does not contravene or unreasonably apply

Federal law.  Accordingly, Rodriguez is not entitled to relief on this claim.

Ground 7.    _Violation of Right Against Self-Incrimination_

Rodriguez further argues that the trial court violated his right against self-incrimination

when it informed Rodriguez that it would not strike any of his prior convictions unless it

understood the circumstances surrounding the instant offense.  The Court of Appeal summarized

the following facts underlying this claim:

> After the jury convicted [Rodriguez] of both counts, the court found true the
> enhancements alleged for his five prior convictions.  The probation report recommended
> [Rodriguez] be sentenced to 50 years to life for burglary and receipt of stolen property,
> plus a determinate term of 30 years for the enhancements.
>
> [Rodriguez], prior to sentencing, brought a motion requesting that the trial court
> sentence him to a maximum determinate term of 18 years by staying the sentence on the
> receipt of stolen property count and exercising its discretion to strike a prior conviction.
> The trial court stated any consideration of the request would require a sentencing hearing.
> According to the court, "From my perspective, fundamentally, I cannot conceive of
> striking even one of [Rodriguez's] prior serious felony convictions unless [Rodriguez]
> were to testify and talk about how he ended up committing the crimes of which he was
> convicted in this case."
>
> At the beginning of the sentencing hearing, the trial court told defense counsel:
> ". . . I don't have sufficient information from your client to determine whether there is
> any legal basis to grant his motion to strike one of his prior serious felony convictions.
> Frankly, I would need to hear from him before I had sufficient evidence to make that
> determination."
> After [Rodriguez] made a successful _Marsden_ motion, the trial court informed him: "As
> I . . . said earlier, I found myself in no position to deal with some of the factual issues
> raised on Mr. Rodriguez's behalf in his motion to strike one of his strikes unless I heard
> testimony or was presented with evidence that supplemented the evidence that was
> presented at trial, and so that's what we've set aside the time for today."  [Rodriguez]
> stated he did not know of anyone who would testify in his behalf.
>
> The court told [Rodriguez]: "Let me make this very clear to you.  Mr. Rodriguez,
> unless I understand what happened the night you were arrested by the Davis Police
> Department, my only recourse is to impose the sentence mandated by law.  I mean, the
> big hole in this case is what do you have to say about what happened that night.  All I
> know is what I heard from Mrs. McNeil and what I heard from the police officers in the
> case.  So I know what she saw, I know what the police officers saw and what they did,
> but I don't know anything from your [perspective].
>
> "So it is up to you whether you want to take the stand.  If you take the stand you
> are subject to cross-examination by Mr. Johnson, but from my [perspective] I don't know
> that there is anything unless you have another witness who was there that night, who is

30

here today to testify.  I don't know that there is anything else you can do aside from taking the stand yourself.

"You don't have to do that.  I'm just telling you the position I find myself in without some additional information."

[Rodriguez] then called his wife as a witness.  Mrs. Rodriguez testified that [Rodriguez] left the house with his son in [Rodriguez's] truck the night of the arrest.  She did not see the truck again until the next day, when [Rodriguez's] son returned it.  Two months prior to the incident, [Rodriguez] told his wife he was struggling with heroin addiction.  [Rodriguez] was a good husband and a good provider.  He had become more remorseful since his incarceration.

[Rodriguez's] pastor also testified.  He stated [Rodriguez] was involved in the church and led a men's transitional program, helping others to get out of drugs, gangs, and alcohol.

[Rodriguez] told the court he would like to write down his concerns.  The court responded that it would not consider any information as evidence unless it was subject to cross-examination.  [Rodriguez] would have to take the stand so the prosecution could ask questions; otherwise, it could not be considered evidence.  The court asked [Rodriguez] if he was going to take the stand and testify under oath.

[Rodriguez] testified.  He stated the night of the incident he and his son took heroin and methadone and went to Davis to steal bikes.  As they approached a house to steal bikes, someone came out and they ran away in different directions.  His son hid in a storage closet.  They noticed car lights and thought it might be the police.  [Rodriguez] was under duress and disoriented; he did not know what he was doing.  He "snagged" the bike, the one the police recovered, but he was not going to keep it.  [Rodriguez] was just trying to "get out of there."  If he had not been using drugs, [Rodriguez] would never have done something like that.  His wife was unaware of the drug use.

During questioning by the prosecution, [Rodriguez] denied he was blaming his son for the incident.  [Rodriguez] stated he was not the one in the storage closet.  [Rodriguez] ran away from the residence, got lost, and took the bike to find his way back.

The trial court during sentencing stated, "we know that on May 1st, by your own admission, you were once again using drugs and you were once again stealing from people.

"The thefts that occurred on May 1st were not simply crimes of opportunity.  You were living in Sacramento at the time.  You had to make the decision to drive to Davis, and you did that with the intent that you were going to steal bicycles in Davis.  So clearly the drug use behavior and the theft behavior that really characterized your entire criminal history had manifested itself once again."

The court sentenced [Rodriguez] to 25 years to life for burglary and a concurrent term of 25 years to life for receipt of stolen property, 10 years for the serious felony enhancements, and 3 years for the prior prison term enhancements, for a total of 38 years to life in prison.  The court stayed the terms for two of the prior prison term enhancements.  The probation report recommended 50 years to life for the burglary and the receipt of stolen property, plus a determinate term of 30 years to life for the enhancements.  In sentencing [Rodriguez], the court stated it imposed a concurrent

31

> sentence on the receipt of stolen property after [Rodriguez] testified he stole the bicycle
> to escape after the burglary: "For that reason, I would find that the theft of the bicycle is a
> crime that occurred on the same occasion, and, therefore, concurrent sentencing can be
> imposed for the possession of the stolen bicycle."

*Rodriguez*, 2014 WL 5390842, at *12.

The Fifth Amendment provides that no person "shall be compelled in any criminal case

to be a witness against himself." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984).  However, as

the Supreme Court has acknowledged:

> [t]he [Fifth] Amendment speaks of compulsion.  It does not preclude a witness
> from testifying voluntarily in matters which may incriminate him.  If, therefore, he
> desires the protection of the privilege, he must claim it or he will not be considered to
> have been "compelled" within the meaning of the Amendment.

*Murphy*, 465 U.S. at 427 (quoting *United States v. Monia*, 317 U.S. 424, 427 (1943)).

The record here reflects that Rodriguez took the stand voluntarily after having been

advised that he had the constitutional right not to do so, and thus his actions were completely

voluntary.  As the Court of Appeal explained:

> Here, the court told [Rodriguez] it was not inclined to exercise its discretion to
> strike one of the priors based on the evidence introduced at trial.  To exercise that
> discretion, the court needed more information about what happened on the night in
> question.  The court told [Rodriguez] it was up to him whether to take the stand and
> asked [Rodriguez] if he had any other witness who was there that night.  The court
> reiterated that [Rodriguez] did not have to take the stand.

*Rodriguez*, 2014 WL 5390842, at *13.

To the extent that Rodriguez felt obliged to testify in order to obtain the strike of a prior

conviction, that fact alone does not amount to compulsion under the Fifth Amendment.  *Cf. Ohio*

*Adult Parole Authority v. Woodard*, 523 U.S. 272, 286 (1998) ("A defendant whose motion for

acquittal at the close of the government's case is denied must then elect whether to stand on his

motion or to put on a defense . . . .  In each of these situations, there are undoubted

pressures—generated by the strength of the government's case against him—pushing the criminal defendant to testify. But it has never been suggested that such pressures constitute 'compulsion' for the Fifth Amendment." (internal citation omitted)).

Moreover, Rodriguez fails to show that he was prejudiced by the trial court's actions. Importantly, the trial court did not state that it would draw an adverse inference against Rodriguez in the event he chose not to testify. Rather, the trial court indicated that it was not inclined to exercise its discretion to strike one of the priors and that, in order to change its mind and exercise that discretion, the court needed more information about the events underlying the current charges. Because it appears that the court did not base solely on Rodriguez's testimony its discretion to not strike the prior, Rodriguez does not show that his testimony prejudiced him. The Court of Appeal's determination was therefore reasonable and forecloses federal habeas relief here.

Ground 8.        _Prosecutorial Misconduct_

Finally, Rodriguez claims that the prosecutor committed misconduct during summation by commenting on Rodriguez's failure to testify. The Court of Appeal considered and rejected this claim on direct appeal as follows:

> According to [Rodriguez], during closing argument the prosecutor violated the prohibition against commenting on a defendant's failure to testify. The prosecutor pointed out that there was no evidence anyone had loaned [Rodriguez] the stolen bicycle.

> **Background**

> During closing argument, the prosecution made the following comments: "And so I point you back to the whole burden of proof. Reasonable. Is that reasonable that that bike changed hands that many times in that short a time period, whether it was a few hours or a few minutes? No, it's not reasonable. And if someone had lent it to him, you can be sure that we would have heard about it.

"That's not saying [Rodriguez] has to prove anything.  They don't.  And [defense counsel] was absolutely correct.  They could sit there and not say one word while I put my case on, and if I fail to prove it to you, he doesn't have to do a thing.  But I can certainly point out to you that if it were as simple as someone had lent it to him and not told him that it had been stolen, you can bet we would have heard that."

**Discussion**

[Rodriguez] contends he would have been the most obvious person to testify that the bicycle he was riding on had been loaned to him and that he did not know that it had been stolen.  Therefore, the prosecution violated the constitutional prohibition against commenting on a defendant's failure to testify.

The prosecution enjoys wide latitude to comment on the evidence presented at trial and to draw inferences from such evidence.  (*People v. Dennis* (1998) 17 Cal.4th 468, 522.)  "We apply a 'reasonable likelihood' standard for reviewing prosecutorial remarks, inquiring whether there is a reasonable likelihood that the jurors misconstrued or misapplied the words in question."  (*People v. Roybal* (1998) 19 Cal.4th 481, 514.)

The Fifth Amendment to the United States Constitution prohibits a prosecutor from commenting, directly or indirectly, on a defendant's decision not to testify in his or her own behalf.  (*Griffin v. California* (1965) 380 U.S. 609, 613 [14 L.Ed.2d 106] (*Griffin*).)  However, an indirect or brief reference to a defendant's failure to testify, without any suggestion that the jury should infer guilt from the defendant's silence, constitutes harmless error.  (*People v. Boyette* (2002) 29 Cal.4th 381, 455–456.)

In *People v. Johnson* (1992) 3 Cal.4th 1183, the Supreme Court noted: "It is true, as defendant asserts, that a prosecutor errs by referring to evidence as 'uncontradicted' when the defendant, who elects not to testify, is the only person who could have refuted it.  [Citation.]  If, however, the evidence could have been contradicted by witnesses other than the defendant, the prosecutor may without violating defendant's privilege against self-incrimination describe the evidence as 'unrefuted' or 'uncontradicted.'  [Citations.]"  (*Id.* at p. 1229.)  In *People v. Lancaster* (2007) 41 Cal.4th 50, 84, the prosecution during closing argument commented that the defense had offered no explanation for a bottle found at the murder scene that contained the defendant's fingerprints.  The Supreme Court found no *Griffin* error: "[T]he prosecutor's statement was a fair comment on the state of the evidence, rather than a comment on defendant's failure to personally provide an alternative explanation."  (*Ibid.*)  Numerous courts have also found a comment on the evidence that does not impugn the defendant's failure to testify does not amount to *Griffin* error.  (*People v. Taylor* (2010) 48 Cal.4th 574, 633; *People v. Mitcham* (1992) 1 Cal.4th 1027, 1051; *People v. Hughes* (2002) 27 Cal.4th 287, 372–375.)

Here, the person who gave [Rodriguez] the bicycle could have provided the testimony the prosecutor referred to in closing argument.  [Rodriguez] was not the only possible source of that information.  Although [Rodriguez] argues he "would have been the most obvious person to testify that the bicycle he was riding on had been loaned to him," he was not the only person who could so testify.  Accordingly, we find no *Griffin* error.

*Rodriguez*, 2014 WL 5390842, at *20-21.

The Fifth Amendment prohibits both the prosecutor and the trial court from commenting on a defendant's failure to testify. *Griffin v. California*, 380 U.S. 609 (1965). However, a prosecutor may comment on the state of the evidence regarding a matter at trial so long as she refrains from commenting on the defendant's failure to testify. *Lockett v. Ohio*, 438 U.S. 586, 595 (1978) (prosecutor's comment that the government's evidence had been "unrefuted" and "uncontradicted" throughout the trial was not a direct comment on defendant's failure to testify); *Cook v. Schriro*, 538 F.3d 1000, 1020 (9th Cir. 2008) (holding that prosecutor's comment that defendant had never told his cellmate where he was when the offense was committed as challenging credibility of the cellmate's testimony concerning defendant's alibi defense, rather than directly commenting on defendant's failure to testify). Although a direct comment about the defendant's failure to testify always violates *Griffin*, a prosecutor's indirect comment violates *Griffin* only "if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987). In analyzing whether a prosecutor's indirect comment violates *Griffin*, "[c]ourts have distinguished between those cases in which the defendant is the sole witness who could possibly offer evidence on a particular issue, and those cases in which the information is available from other defense witnesses as well." *Id.* at 810.

Here, the California courts' rejection of Rodriguez's *Griffin* error claim was not contrary to, nor an unreasonable application of, clearly-established federal law. The prosecutor's comments did not constitute a direct attack on Rodriguez's failure to testify, nor were they an

35

impermissible indirect attack for the purposes of calling attention to Rodriguez's failure to

testify.  Rather, the prosecutor's comments related to the failure of the defense to call witnesses

who might logically explain why Rodriguez lawfully possessed the bicycle.  Instead of pointing

to Rodriguez's own failure to testify on the subject, the prosecutor highlighted that the jury had

not heard any explanation regarding the presence of the bicycle.  Thus, the prosecution simply

pointed to Rodriguez's failure to introduce material evidence or to call another individual who

could rebut the inference of guilt based on Rodriguez's possession of the stolen bicycle.  As the

Court of Appeal observed, Rodriguez was not the only person who could explain how he came to

possess the bicycle.  Consequently, the comments were not of "such a character that the jury

would naturally and necessarily take it to be a comment on the failure" of Rodriguez to testify.

*See Lincoln*, 807 F.2d at 809.

        In any event, any alleged *Griffin* error was harmless under *Brecht v. Abrahamson*, 507

U.S. 619 (1993).  A *Griffin* error is not harmless "where such comment is extensive, where an

inference of guilt from silence is stressed to the jury as a basis for the conviction, and where

there is evidence that could have supported acquittal."  *Hovey v. Ayers*, 458 F.3d 892, 912 (9th

Cir. 2006).  Here, the challenged comments were brief and the prosecutor did not stress, or even

say, that the jury could infer guilt from Rodriguez's failure to testify.  *See id.* (any *Griffin* error

harmless where challenged comments were isolated comments and minimal in comparison with

the weight of the evidence).  Furthermore, the court also instructed the jury that the statements of

counsel were not evidence, that Rodriguez had a constitutional right not to testify, and that the

jury could not consider his failure to testify "for any reason at all" or discuss it in deliberations.

*Id*. at 913 (*Griffin* error harmless where, among other things, trial court instructed jury that

statements of counsel were not evidence).  Accordingly, Rodriguez is not entitled to relief on any

argument advanced in support of this prosecutorial misconduct claim.

V. CONCLUSION AND ORDER

Rodriguez is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain

a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the

Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: September 15, 2020.

                                        /s/James K. Singleton, Jr.
                                      JAMES K. SINGLETON, JR.
                                      Senior United States District Judge